IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2020

## LAVAR R. JERNIGAN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-71221  Royce Taylor, Judge**

———————————————————

### No. M2019-00182-CCA-R3-PC

———————————————————

The Petitioner, LaVar R. Jernigan, appeals the order of the Rutherford County Circuit Court denying post-conviction relief from his convictions for six counts of especially aggravated sexual exploitation of a minor, for which he received an effective sentence of thirty years' imprisonment.  See State v. LaVar Jernigan, No. M2016-00507-CCA-R3-CD, 2017 WL 1019513 (Tenn. Crim. App. Mar. 15, 2017).  The Petitioner argues the State failed to disclose the existence of a "notebook" compilation containing over 6000 text messages between the victim and the Petitioner, in violation of Rule 16 of the Tennessee Rules of Criminal Procedure and in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).[1]  He additionally argues that trial counsel was ineffective in failing to (1) advise the Petitioner of the existence of the notebook thereby resulting in the Petitioner's rejection of a four-year offer by the State to settle the case; (2) object to the admission of the "notebook" at trial; and (3) prepare and preserve the record in his direct appeal.  Upon our review, we vacate the Petitioner's convictions, reverse the judgment of the post-conviction court, and remand this matter for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Kris M. Oliver, Murfreesboro, Tennessee, for the Petitioner, Lavar R. Jernigan.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Hugh T. Ammerman, III, Assistant District Attorney General, for the Appellee, State of Tennessee.

---

[1] The Petitioner presents eleven issues in his brief.  For ease of analysis, these issues have re-numbered and combined for appellate review. We also observe the petition for post-conviction relief and the order denying the same addressed various other issues not raised on appeal for our review.

## OPINION

At some point in October 2012, the Petitioner, an assistant to the band director at a high school in Lawrence County, Tennessee, and the sixteen-year-old victim, a student and band member at the same high school, began exchanging emails. The victim testified at trial that the emails initially were about stressful events in her life, including the deaths of her grandfather and a close friend. Within a few weeks, the Petitioner and the victim began talking on the phone and exchanging text messages. Their relationship eventually became "physical" after a football game when the Petitioner placed his hand on her leg, and in another incident, when he kissed her and touched her buttocks in a closet after a band competition. State v. LaVar Jernigan, 2017 WL 1019513, at *3-4.

A Lawrence County Sheriff's detective learned a concerned parent at the victim's school thought the Petitioner and the victim were having an inappropriate relationship. On April 10, 2013, the detective spoke to the victim and her mother and took the victim's cell phone with her mother's consent. The victim admitted she had sent the Petitioner sexually explicit videos of herself and that he had sent her videos of himself masturbating. Based upon his investigation, the Lawrence County detective obtained an arrest warrant in Lawrence County for the Petitioner for sexual exploitation of a minor by electronic means and solicitation of a minor. LaVar Jernigan, 2017 WL 1019513, at *9. Detectives from Lawrence County and Rutherford County later interviewed the Petitioner, which was recorded and played for the jury. The Petitioner initially denied having an inappropriate relationship with the victim; however, when pressed, he admitted their relationship had "escalated." Id. at *8. The Petitioner said the text messages concerned the victim wanting to have sexual intercourse, but he told the victim they had to wait until she was age eighteen. They discussed various sexual acts and had phone sex. The victim asked for a video recording of him "ejaculating," the Petitioner sent her a recording of the same, and the Petitioner said it was "stupid." He denied the victim sent him any recordings. Id. at *8. On September 9, 2013, the Petitioner pleaded guilty [in Lawrence County] to one count of sexual exploitation of a minor by electronic means, see Tenn. Code Ann. §39-13-529(b)(2),[2] and received a two-year sentence to be served on probation. Id. at *1.

---

[2] Tennessee Code Annotated section 39-13-529(b)(2), a Class E felony, provides, in relevant part, that "It is unlawful for any person eighteen (18) years of age or older, directly or by means of electronic communication, electronic mail or internet service, including webcam communications, to intentionally . . . . (2) Display to a minor, or expose a minor to, any material containing simulated sexual activity that is patently offensive or sexual activity if the purpose of the display can reasonably be construed as being for the sexual arousal or gratification of the minor or the person displaying the material[.]"

Nearly six months later, on February 4, 2014, the Rutherford County Grand Jury returned a forty-five-count indictment charging the Petitioner with multiple counts of especially aggravated sexual exploitation of a minor, aggravated sexual exploitation of a minor, and sexual exploitation of a minor, all stemming from the Lawrence County investigation. Lavar Jernigan, 2017 WL 1019513, at *1. Although Lawrence County authorities had possession of the Petitioner's and the victim's cell phones at the time of the Petitioner's guilty plea, photographs believed to have been deleted on the Petitioner's cell phone were later recovered by an analyst with the Murfreesboro Police Department. The Rutherford County charges were based upon the victim's sending the Petitioner nude photographs of herself at the Petitioner's request. The prosecutor stated that both counties had jurisdiction and that the Rutherford County prosecution was based upon conduct that occurred in Rutherford County. Id. at *2.

As relevant to the issues raised in this appeal, the victim testified at trial that she and the Petitioner sent text messages to each other daily, and she agreed she probably exchanged approximately 6000 text messages between October 9, 2012, and February 9, 2013. She sent the Petitioner photographs of herself once or twice a week, and she identified seven photographs at trial she had taken of herself and sent at the Petitioner's request. The photographs showed the Petitioner and the victim's faces, the victim standing in front of a mirror naked from the waist up, the victim's face and breasts, and the victim's vagina. The victim denied having sexual intercourse with the Petitioner. Detective West, the Murfreesboro detective who examined the cell phones belonging to the Petitioner and the victim testified, in relevant part, as follows:

[S]he recovered a photograph from the [the Petitioner's] phone showing [the victim] standing in front of a mirror and naked from the waist up, that the photograph was "created" on the [Petitioner's] phone on November 6, 2012, that the photograph was accessed on the [Petitioner's] phone on the same date, and that the same photograph, previously identified during [the victim's] testimony, was retrieved from [the victim's] phone. Detective West stated that text messages were exchanged before and after the photograph was sent and received, that the message from the [Petitioner] after receiving the photograph stated, "Nice," that the message from [the victim] stated, "Thank you," and that the message from the [Petitioner] stated, "No problem."

Detective West testified that a photograph of the victim's breasts was created on October 30, 2012, that the photograph was found on the victim's and the [Petitioner's] cell phones, and that a series of text messages were exchanged between the [Petitioner] and the victim regarding the photograph. Detective West stated that a message from the [Petitioner] requested a photograph, that

the victim responded she would send a photograph after 10:00, that the photograph was sent from the victim's phone to the [Petitioner's] phone at approximately 10:07, and that the [Petitioner] responded "nice."

Detective West testified that two photographs of the victim standing in front of a mirror naked from the waist up were found on the victim's and the [Petitioner's] cell phones. Detective West stated that the photographs of the victim's vagina were found on the [Petitioner's] phone. Detective West stated that one of the photographs showing the victim's vagina was created on January 24, 2013, and that her analysis showed an exchange of text messages between the [Petitioner] and the victim's phones. Relative to a second photograph showing the victim's vagina, Detective West stated the photograph was sent from the victim's phone to the [Petitioner's] phone about thirty minutes after the first photograph of the victim's vagina. Detective West stated that a third photograph of the victim's vagina was created on January 25, 2013, and that messages were exchanged before and after the photograph was created. Detective West said that her analysis also showed when a photograph was last accessed but that she could not determine when a photograph was deleted or backed up.

Detective West testified relative to a "voluminous" notebook, which was received as an exhibit, containing text messages found on the [Petitioner's] and the victim's cell phones. Detective West read to the jury numerous messages exchanged between the [Petitioner] and the victim. Detective West said that on October 21, 2012, the [Petitioner's] cell phone received a message, that the message was read, and that the [Petitioner's] response to the victim included a frowning face and stated, "[N]aked, please, LOL." Detective West stated that the victim responded that she was working and that she could not send a photograph. Detective West stated that the Petitioner responded with a frowning face and that the victim apologized and stated, "Sorry, you have to earn a naked picture .... You don't get one yet." Detective West said the [Petitioner's] response was a frowning face.

Detective West testified relative to an October 22, 2012 text message exchange between the [Petitioner's] and the victim's cell phones. In the exchange, the victim stated she missed the [Petitioner], the [Petitioner] asked the victim how much she missed him and asked her to show him through a photograph, and the victim stated she was sorry. The [Petitioner] responded that the victim was not sorry and that she "should prove it."

- 4 -

Detective West testified regarding a text message exchange between the [Petitioner] and the victim on October 24, 2012. In the exchange, the [Petitioner] requested a photograph and stated that he "want[ed] a p---- pic so badly, LOL." Relative to October 27, Detective West stated that the [Petitioner] sent a text message to the victim stating, "[G]reat pic. I love your stomach .... Can you please take off your pants and take another one, please." Detective West testified regarding a text message exchange between the [Petitioner] and the victim on October 28, 2012. In the exchange, the victim stated, "LOL, tank tops is all I ever wear with sweat pants," and the [Petitioner] responded, "[S]o pull out them [breasts] and send [a] pic, baby, LOL ... just playing ... but your [breasts] are nice." In another exchange later the same day, the victim asked, "[W]hat do you want a pic of," and the [Petitioner] responded that he wanted a photograph of "my" breasts. The victim stated, "[N]o sorry. And who says they are yours," and the [Petitioner] responded, "[Y]ou did when you said you loved me. You did when you said you're jealous. You did when you said I want my chocolate teddy bear."

Detective West testified regarding a text message exchange between the [Petitioner] and the victim on October 30, 2012. In the exchange, the [Petitioner] asked, "[W]here my pic," and the victim responded, "[P]ic first, and I'll call." Detective West stated that a photograph was sent from the victim's cell phone to the [Petitioner's] phone, after which the [Petitioner] responded, "Nice. When did you take this one. Can I get one of more stomach and [breasts], please?" Detective West stated that the photograph exchange was one of the photographs previously received as an exhibit.

Detective West testified that on November 1, 2012, the [Petitioner] sent the victim the following text message: "finger your p---- once, and send me a pic of ... your fingers, please." Detective West stated that on November 25, the victim sent the [Petitioner] a photograph, that the [Petitioner] responded, "Nice pic ... but it's not the pic I'm ... waiting for," that the victim asked what type of photograph the [Petitioner] wanted, and that the [Petitioner] stated, "[P]----, fingers, remember. Naked body, remember."

Detective West testified that on December 21, 2012, another text message exchange occurred between the [Petitioner] and the victim. In the exchange, the [Petitioner] requested a photograph of her vagina, but the victim stated that she was not in a good mood but that she still loved the [Petitioner]. Detective West testified that on February 18, 2013, another text message exchange occurred between the [Petitioner] and the victim. In the exchange, the [Petitioner] stated that he was looking at a photograph of the victim, and

the victim inquired whether the [Petitioner] was masturbating. The [Petitioner] admitted he was, and the victim responded that she wished she could facilitate his orgasm. Detective West stated that later the same day the [Petitioner] sent the victim a message stating, "[B]ased on you pic this morning, your p---- looks nice and clean. Did you shave?" Again on February 18 and on February 23, the [Petitioner] sent messages requesting a photograph of the victim's vagina, but the victim declined. The remainder of the [Petitioner's] and the victim's messages were related to sexually explicit topics.

Detective West testified that on February 25, 2013, the [Petitioner] and the victim exchanged text messages related to their deleting photographs from their cell phones. In the exchange, the victim said she had deleted the photographs from her phone, the [Petitioner] reminded her to delete the photographs from the "trash," and the victim stated she had. Detective West testified that on March 3, 2013, the [Petitioner] and the victim exchanged text messages and that the [Petitioner] requested a photograph of the victim's vagina. The victim agreed to send a photograph after she finished bathing. The [Petitioner] continued requesting a photograph, the victim responded for the [Petitioner] to "calm down," and the [Petitioner] responded, "[N]ice." Detective West testified regarding a March 14, 2013 text message exchange in which the [Petitioner] requested another photograph of "something" inside her vagina and suggested two objects.

Detective West testified regarding an April 1, 2013 text message exchange. In the exchange, the [Petitioner] stated, "Nice," and the victim asked if the [Petitioner] liked "it." The [Petitioner] responded, "I thought I said no more pics. I'm not trying to go to jail for child porn," and the victim stated, "I thought you would like it, baby." The [Petitioner] stated he "loved ... it." An April 7, 2013 text message exchange reflected that the [Petitioner] thought a woman was suspicious and "fishing for information," told the victim to delete all text message and call log information from her phone, and asked the victim to find out why the woman wanted the victim to call the [Petitioner]. The victim responded she had deleted the relevant information on her phone and agreed to speak to the woman, and the [Petitioner] expressed concern about going to jail.

LaVar Jernigan, 2017 WL 1019513, at *5-7.

The State's election of offenses consisted of the following: count one the production of the photograph occurring on October 29, 2012, showing the victim with her arm held

across her abdomen and her naked breasts exposed; count two the production of the photograph occurring on October 29, 2012, showing the victim in front of a dry bathroom mirror with her naked breasts exposed; count three the production of the photograph on November 6, 2012, showing the victim in front of a fogged bathroom mirror with her naked breasts exposed; count four the production of a photograph occurring on January 23, 2013, showing a close up angle of the vagina with the fingers being used to spread it apart; count five the production of a close up photograph of the same image as in count four on the same day; count six the production of a photograph on January 24, 2013, showing the victim's vagina and four fingers.

Following his convictions in this case, the Petitioner appealed arguing, inter alia, that the trial court erred in permitting the State to present evidence of the notebook containing text messages exchanged between the Petitioner and the victim, from which Detective West read during her testimony. The Petitioner alleged that the material was never provided to the defense or disclosed before it was introduced at the trial. Id. at *10. In denying relief, this court noted as follows:

[T]he [Petitioner] asserts in his brief that the defense's discovery request pursuant to Tennessee Rule of Criminal Procedure 16 was filed on February 24, 2014, and that the request included the defense be allowed to inspect all books, papers, documents, photographs, and tangible objects. However, the [Petitioner's] discovery request does not appear in the appellate record. The notebook containing more than 6000 text messages exchanged between the [Petitioner] and the victim is likewise not included in the appellate record, although the record reflects that Detective West read some of the messages during her trial testimony. To further complicate appellate review, counsel raised this issue in his motion for a new trial, but the transcript from the motion hearing is not included in the appellate record. The trial court's written order denying the motion merely incorporates its findings from the hearing and does not recite individual findings of fact and conclusions of law.

The [Petitioner] has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal. This includes the obligation to have a transcript of the evidence or proceedings prepared. When the record is incomplete, or does not contain the proceedings relevant to an issue, this [c]ourt is precluded from considering the issue. Likewise, this [c]ourt must conclusively presume that the ruling of the trial court was correct in all particulars. The [Petitioner] has failed to prepare an adequate record for this issue, and he is not entitled to relief.

We have not overlooked the State's argument that the defense failed to object contemporaneously to the admission of the text message exchanges. The record reflects that although trial counsel mentioned during his cross-examination that he had not seen "these" previously, counsel did not object when the State requested that the notebook be received as an exhibit or when Detective West read from the messages during her testimony. Therefore, the inadequate record notwithstanding, appellate review of this issue is waived for the defense's failure to object contemporaneously to the admission of the evidence. The [Petitioner] is not entitled to relief.

Id. at * 10 (internal quotations and citations omitted).

On March 20, 2018, the Petitioner, acting pro se, filed a twenty-two-page petition for post-conviction relief alleging numerous grounds of ineffective assistance of counsel. Attached to the petition were various exhibits including copies of an April 11, 2013 report detailing the findings and analysis of the cell phones belonging to the Petitioner and the victim by Detective West; excerpts from the transcript of the motion for bill of particulars during which the State averred they were not required to provide the defense with specific dates and times of the photographs recovered from the Petitioner's phone; the Lawrence County arrest warrant and grand jury presentment; and a March 13, 2018 affidavit of the Petitioner affirming his chronology of the events in this case. One of the exhibits to the petition is a copy of the State's February 28, 2014 response to the Petitioner's discovery request. Notably, the response explicitly provided, among other things, as follows:

1. Physical evidence: none known[.]
2. Documents and Tangible objects: Pursuant to Rule 16(a)(1)(f) Rules of Criminal Procedure based upon defendant's request, the State shall permit the defendant to inspect and copy or photograph: Copies are not made of child pornography without a court order. You may make arrangements to view the evidence by contacting the District Attorney's Office. Placed in the court file: Certified conviction, picture, warrants, phone report search warrant, detective notes.

The Petitioner also attached to his petition copies of a May 15, 2015 motion in limine by the State moving to exclude from trial the disposition of the Petitioner's Lawrence County case, because the court had previously ruled in the motion to dismiss that "while arising out of the same act or transaction, [the offenses] do not violate double jeopardy." Accordingly, the State averred the disposition of the Lawrence County case was not relevant and inadmissible in the trial of the Rutherford County case. On March 26, 2018, by order of the post-conviction court, the petitioner was appointed counsel, who later filed a Rule 28 notice asserting no amended petition would be filed in this case.

Without specifically addressing any of the Petitioner's claims, the State filed a written response denying the allegations in the petition.

The post-conviction court conducted an evidentiary hearing on September 13, 2018. Before the hearing began, post-conviction counsel alerted the court that the notebook in question was "missing." Post-conviction counsel said, "I've checked with the clerk's office and my understanding is now they, I'm not sure if they have the notebook, I don't know where the notebook is, and I need to . . . make it part of the record of this hearing in the event" of an appeal.[3] Upon questioning by the court, the State advised that it had checked with the clerk's office again that morning, and that they had been unable to locate the notebook. The post-conviction court acknowledged that the missing exhibit was problematic, but the hearing proceeded.

Trial counsel was retained to represent the Petitioner at trial and on appeal. Asked whether he recalled the notebook being admitted as an exhibit at trial, counsel advised that he did. However, counsel said he had not seen the notebook prior to trial, and he did not know it existed. Counsel explained, "I didn't know there was a large bound notebook with 6,000 text messages. I knew that there had been some communication between the [Petitioner and the victim], but the compilation, I had no idea about." In fact, counsel testified that he had not seen any actual text messages between the Petitioner and the victim before trial, and no one advised him about them. Counsel had represented the Petitioner in the Lawrence County case and was aware the authorities had taken the Petitioner's phone. He knew there were photographs, videos, and "communications" on the phone. He conducted a preliminary hearing and received some discovery in the Lawrence County case; however, he did not get a notebook or a compilation of text messages from the Petitioner's phone. Counsel settled the Lawrence County case "quickly" by plea agreement, which he believed was in the Petitioner's favor. Counsel also advised following the Rutherford County indictments, the Petitioner's case was handled by three different prosecutors, none of whom provided him with the notebook or advised him text messages from the Petitioner's phone would be admitted at trial. Counsel's discovery request from the Petitioner's trial was admitted as an exhibit to the post-conviction hearing.

Counsel acknowledged he was provided an "extraction report" of the Petitioner's phone. He described the report as "a couple of, three sheets of paper" and denied receiving a hard copy or an electronic file of the report. Asked if he had viewed "the video," in this case, counsel explained he had viewed photographs taken from the victim's phone in the

---

[3] Yet again, the record in this post-conviction appeal did not contain the notebook. However, based on post-conviction counsel's comments and the order of the post-conviction court requiring the notebook to be exhibited to the hearing, we deem the omission of the exhibit to be a clerical error. This court ordered supplementation of the record by the trial court clerk and received the notebook, which was admitted at trial as exhibit 4 and at the post-conviction hearing as exhibit 1, on June 3, 2020.

privacy of the district attorney's office. Counsel knew about the photographs and the video of the Petitioner prior to trial, which he described as "devastating." However, counsel "had no idea" about the text messages. Asked why he did not object to the admission of the notebook at trial, counsel explained it would have taken him a day or two to read the entirety of the notebook, and he feared the delay would anger the jury. Asked why he raised the issue in the motion for new trial knowing that it had been waived, counsel replied, "'Cause you, I just do."

On cross-examination, counsel acknowledged having received the April 11, 2013 analysis and "hard" report by Detective West prior to trial, which was admitted as an exhibit to the hearing. A paragraph in the report noted "the program that proved the most valuable with respect to retrieving data from the victim's phone was SUSTEEN's SV3. The phone had to be processed separately for CONTACTS, DATA, CALL HISTORY, MESSAGING, AND FILES, due to the volume." Nevertheless, counsel denied having received any digital media from the State prior to trial. Counsel acknowledged that his assistant at the time picked up various items of discovery from the district attorney's office and that he was aware from the preliminary hearing in Lawrence County of numerous text messages between the Petitioner and the victim. Finally, counsel agreed that even if he had been successful in excluding the notebook at trial, there was "exceedingly strong" evidence against the Petitioner in this case.

On re-direct examination, counsel acknowledged he could have prepared a better defense of the Petitioner had he known the specific dates, times, and location of the Petitioner as outlined by the text messages in the notebook. He reiterated his strongest defense pertained to where the Petitioner was located at the time of the photographs and the video or the State's inability to establish venue, and he continued to believe prosecution of the Petitioner in both Lawrence County and Rutherford County violated principles of double jeopardy, regardless of the trial court's denial of his motion.

The Petitioner testified and agreed he had never seen the notebook prior to trial. The first time he saw the text messages was on screen at trial, and he was "shocked" because they had not been provided to him in discovery. The Petitioner acknowledged he was aware of the pictures and the video of him masturbating; however, he said he had never actually seen them. He believed the same pictures and video were the basis of the Lawrence County conviction, and he pleaded guilty to the same upon the advice of trial counsel. Had he known about the text messages in the notebook, the Petitioner believed he would have been successful in the motions to dismiss based on double jeopardy and his motion for a bill of particulars. He reasoned the text messages narrowed down the specific dates and times of the alleged offenses. The Petitioner queried, "how can you prepare for something that you can't see?"

Finally, the Petitioner said he would not have proceeded to trial had he known about the information contained in the notebook. He rejected the State's last four-year offer to settle the case because he believed, after talking with counsel, that the Lawrence County and Rutherford County cases were "the same thing." He sought review of the double jeopardy issue on appeal; however, he believed counsel was ineffective in the direct appeal of his case. His main concern was the fact that counsel had failed to include several items in the technical record. The Petitioner also believed that counsel was ineffective in failing to object to the admission of the notebook at trial. The Petitioner recalled a law school class was in court the day the notebook was admitted, and a teacher "took the Tennessee Rules of Evidence [book] and threw . . . [it] over the rail to the table" at them. The Petitioner testified, "if another law school person know[s] that you should object to this, maybe you should."

The post-conviction court conducted another hearing on November 16, 2018, to address the missing notebook. At this point, the court noted that the notebook had been found for review and had been made an exhibit to the hearing. By written order on January 3, 2019, the post-conviction court denied relief, finding that the Petitioner had failed to establish by clear and convincing evidence that counsel was deficient in his representation and that none of the alleged deficiencies prejudiced the Petitioner's case. The Petitioner filed a timely notice of appeal, and this case is now properly before this court for review.

## ANALYSIS

**I. Discovery and Brady Violations.** Because they are interrelated, we have combined issues five through eleven as outlined in the Petitioner's brief concerning his pre-trial claims involving the State's notebook compilation, which contained over 6000 text messages between the victim and the Petitioner that was subsequently admitted into evidence at trial. The Petitioner first argues that neither the notebook nor the 6000 text messages contained therein were provided to trial counsel in discovery in violation of Rule 16 of the Tennessee Rules of Criminal Procedure. See Tenn. R. Crim. Proc. 16(F)(i)-(iii). The Petitioner asserts further that the State's Rule 16 discovery violation was compounded when the State refused to provide him with the location of the instant offenses at the hearing on his bill of particulars and motion to dismiss. At the time, trial counsel had theorized that prosecution of the instant, Rutherford County cases was based on the same criminal conduct as the prior, Lawrence County convictions, which was barred by principles of double jeopardy. The Petitioner now contends the text messages that were withheld in discovery and admitted at trial established the location of the offenses as Lawrence County and, as such, the State was unable to establish jurisdiction. Accordingly, the Petitioner asserts the text messages were therefore exculpatory and the State's failure to provide them violated his due process rights under the Fourteenth Amendment of the United States Constitution. See State v. Downey, 259 S.W.3d 723, 737 (Tenn. 2008); Sample v. State,

- 11 -

82 S.W.3d 267, 270 (Tenn. 2002) ("The United States Supreme Court has held that 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.'")(quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). In response, the State argues generally that the order denying post-conviction relief should be upheld.[4]

As relevant here, the post-conviction court determined as follows:

> The [P]etitioner's second assertion in his petition for post-conviction relief is that the State failed to disclose favorable evidence prior to trial. Specifically, the [P]etitioner claims that the State failed to disclose prior to trial the "notebook" of the text messages and a video of the [P]etitioner masturbating. The Court finds that the [P]etitioner has failed to disclose evidence in violation [of] the Fourteenth Amendment of the United States Constitution.
>
> . . . .
>
> Turning to the facts of this case, the [P]etitioner has failed to prove by clear and convincing evidence that the State failed to disclose favorable evidence prior to trial in violation of the Fourteenth Amendment to the United States Constitution.
>
> At the hearing, [trial counsel], testified that three (3) Assistant District Attorneys (ADA) handled the prosecution of the [P]etitioner's case. First, ADA [one] handled the preliminary discovery matters on the case. Next, ADA [two] handled the [P]etitioner's motion for a bill of particulars, motion to dismiss on the basis of double jeopardy, and other various pretrial motions. Finally, ADA [three] handled various other pretrial discovery matters and the [P]etitioner's trial.
>
> [Trial counsel] testified that he had visited the District Attorney's Office to view the video and the pictures that were extracted from the [P]etitioner's cellular phone. He testified that the photographs and video were "devasting[.]" Further, [trial counsel] agreed that the three (3) separate discovery receipts (collective exhibit 3) were signed by his assistant [her name] and picked up on May 15, 2015. Moreover, [trial counsel] testified

---

[4] We acknowledge that the State argued waiver of these issues based on the absence of the notebook in the record on appeal. Waiver notwithstanding, the State argued, alternatively, that the Petitioner was not entitled to relief because he failed to establish prejudice.

that he had viewed the extraction report from the victim's cellular phone in a previous case that arose from the same facts in Lawrence County. He testified that the extraction report mentioned thousands of text messages between the victim and the [P]etitioner. Additionally, [trial counsel] acknowledged that he had viewed the [P]etitioner's audio/video recorded interview in which the [P]etitioner confessed to sending numerous text messages, including text messages that were sexual in nature. Finally, [trial counsel] testified that even if he had managed to exclude the "notebook" from evidence through some type of discovery violation, the proof was still exceedingly strong against the [P]etitioner.

The Court finds that while [trial counsel] may not have actually viewed the bound "notebook" of the text messages as a whole, he did have actual knowledge that the text messages existed and possessed the extraction report from the victim's cellular phone. [Trial counsel] knew that there were several thousand text messages that existed from the cellular phone extractions of both the victim and the petitioner's phones. Further, [trial counsel] had viewed the sexual images and the video of the [P]etitioner masturbating that were sent via text message. [Trial counsel] was aware that there were numerous text messages because the [P]etitioner confessed to sending daily texts to the victim in his recorded interview with police. While [trial counsel] had not viewed the text messages as a whole in the bound "notebook" introduced at trial, he had viewed numerous text messages that were included in the bound "notebook" and the sexual images and video that were recovered in the text messages. Therefore, the Court finds that the [P]etitioner has failed to show by clear and convincing evidence that the State failed to disclose favorable evidence in violation of the Fourteenth Amendment to the United States Constitution.

. . .

The [P]etitioner alleged in his petition that his convictions violated the Double Jeopardy clause of the Fifth Amendment of the United States Constitution. However, the [P]etitioner failed to present any evidence of this allegation at the hearing. Further, this Court and the Tennessee Court of Criminal Appeals have previously ruled that the [P]etitioner's convictions do not violate the Double Jeopardy clause of the Fifth Amendment. Therefore, the Court finds that this issue is waived.

Rule 16 of the Tennessee Rules of Criminal Procedure governs disclosure of certain categories of information and provides, in relevant part, as follows:

> Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, if the item is within the state's possession, custody, or control and:
>
> > (i) the item is material to preparing the defense;
> > (ii) the government intends to use the item in its case-in-chief at trial; or
> > (iii) the item was obtained from or belongs to the defendant.
>
> Reports of Examinations and Tests. Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph the results or reports of physical or mental examinations, and of scientific tests or experiments if:
>
> > (i)    the item is within the state's possession, custody, or control;
> > (ii) the district attorney general knows--or through due diligence could know--that the item exists; and
> > (iii) the item is material to preparing the defense or the state intends to use the item in its case-in-chief at trial.

Tenn. R. Crim. P. 16(a)(1)(F), (G). These mandatory discovery provisions are intended to contribute to the fair and efficient administration of criminal justice by providing the defendant with sufficient information upon which to base an intelligent a plea; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact[-]finding process. See United States v. Alvarez, 987 F.2d 77, 85 (1st Cir. 1993)(citing Fed. R. Crim. P. 16, advisory committee's note.) If a party fails to comply with this rule, the trial court may order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms or conditions; grant a continuance; prohibit the party from introducing the undisclosed evidence; or enter such other order as it deems just under the circumstances. Tenn. R. Crim. P. 16(d)(2)(A)-(B).

A discovery violation amounts to reversible error only when the defendant establishes an abuse of discretion and substantial prejudice. United States v. Alvarez, 987 F.2d at 85; United States v. Camargo-Vergara, 57 F.3d 993, 998-99 (11th Cir.1995); United States v. Salerno, 108 F.3d 730, 738-39 (7th Cir. 1997). Substantial prejudice exists when

- 14 -

a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense or if the mistake substantially influences the jury. Id. (internal citations omitted).

Although there is no general right to discovery in a criminal trial, see Weatherford v. Bursey, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977), in the landmark case of Brady v. Maryland, the United States Supreme Court held, "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87; see Johnson v. State, 38 S.W.3d 52, 55 (Tenn. 2001)("Every criminal defendant is guaranteed the right to a fair trial under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the 'Law of the Land' Clause of Article I, section 8 of the Tennessee Constitution."); State v. Jackson, 444 S.W.3d 554, 593 (Tenn. 2014)(noting that the Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions comport with prevailing notions of fundamental fairness and that this standard of fairness requires that criminal defendants be afforded a meaningful opportunity to present a complete defense)(internal citations/quotations omitted)). "The materiality standard for Rule 16 'essentially tracks the Brady materiality rule, though some courts have found that materiality under Rule 16 is broader than under Brady.'" See United States v. Bulger, 928 F. Supp. 2d 305, 323 (D. Mass. 2013), aff'd, 816 F.3d 137 (1st Cir. 2016) (quoting United States v. LaRouche Campaign, 695 F.Supp. 1290, 1306 (D.Mass. 1988) and United States v. Pesaturo, 519 F. Supp. 2d 177, 189 (D. Mass. 2007))(noting that Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process).

**A. Discovery Violation.** During trial and upon direct examination of Detective West, the State explained that the text messages were a collaboration between the prosecutor and the detective upon review of the extraction report, selecting the relevant text messages, and compiling them in a usable format. After trial counsel noted he had not previously seen any of the text messages that were apparently being displayed on a screen during the detective's testimony, the State continued to illicit testimony from the detective pertaining to the text messages. This culminated in the admission of the entire notebook at trial. The proof at trial further showed that Detective West had previously provided the State with a thumb-drive of the full extraction report. Here, we note the difference between (1) a digital copy of the full extraction of the phones (i.e. thumb-drive or USB drive); (2) a paper copy of the report of the extraction; and (3) access to a compilation of the extraction report. At the motion for new trial, the State further advised that "[t]he notebook that was presented as proof at trial was simply the sort of work product, if you will, or printouts of

that information that is specifically referenced in those documents regarding the fact that the following extractions were done on these two devices." At the post-conviction hearing, trial counsel testified that he received a report of the extraction of the cell phones. As such, we acknowledge the State appears to have provided trial counsel with a report of the extraction. However, to the extent the State argues that providing a report of the extraction discharged their Rule 16 duty to disclose in this case, we disagree. See State v. Schiefelbein, 230 S.W.3d 88, 111-12 (Tenn. Crim. App. 2007) (noting that the language of Rule 16 is straightforward, the State's duty is mandatory, and "the state *shall permit*" inspection and copying); see also Tenn. Rule Evid. 1006 ("The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals or duplicates shall be made available for examination or copying, or both, by other parties at reasonable times and places. The court may order that they be produced in court.").

With the ever-increasing use of metadata extracted from cell phones, we are compelled to discuss the requirements of Rule 1006 of the Tennessee Rules of Evidence, which governs summaries of the contents of voluminous documents. Tenn. R. Evid. 1006, Adv. Comm'n Comments. To utilize a compilation of voluminous information, as the State did here, the proponent must make the originals or duplicates available for examination or copying, or both, to other parties at a reasonable time prior to trial. United States v. Dunnican, 961 F.3d 859, 873 (6th Cir. 2020)(noting that Rule 1006 was designed for cell phone extractions because the amount of evidence is so "unwieldly and robust that it would take multiple months (possibly, even years) for a court to examine"). Because the summary is substantive evidence to be used in the party's case in chief, the summary must be provided to opposing counsel pursuant to Rule 16 of the Tennessee Rules of Criminal Procedure. United States v. Bray, 139 F.3d 1104, 1111 (6th Cir.1998) ("At bottom, because summaries are admitted as evidence in lieu of the records themselves, they must be both 'accurate and nonprejudicial.'"); see e.g Wade V. Davies, Using the Summary Rule to Advance Your Trial Theory, Tenn. B.J., March 2017, at 28-29 (discussing modern application of Rule 1006). In other words, in addition to providing the opposing party with access to the underlying material, the evidence to be summarized must be *admissible* at trial and the information must be voluminous.

As will be discussed more fully below, the record shows that trial counsel made repeated attempts to obtain discovery from the State to pinpoint the date, time, and location of the offenses at issue. We are at a loss to understand why the State was insistent in refusing trial counsel's repeated efforts to obtain this information, which easily could have been satisfied with a copy of the text messages or access to the notebook compilation. A prudent prosecutor will err on the side of full disclosure so that justice may be done, rather than seek a short-term tactical advantage to ensure a conviction. The record shows that trial counsel never received nor was permitted access to review a copy of the extraction

- 16 -

thumb-drive, the actual text messages from the extraction report, or the notebook compilation of the text messages prior to trial. Accordingly, on this record, we conclude the State failed to comply with Rule 16 and Rule 1006. We must now determine the effect, if any, of these violations on the Petitioner's trial or whether the Petitioner suffered any prejudice.

The State argues that the Petitioner has failed to establish any prejudice because the evidence of guilt was overwhelming. In this case, the State indicted the Petitioner with forty-five-counts of especially aggravated sexual exploitation of a minor, aggravated sexual exploitation of a minor, and sexual exploitation of a minor. No specific date for the offenses was given, and trial counsel's motions to dismiss and for a bill of particulars were denied. The State also conceded pre-trial that the offense-conduct for the instant offenses arose from the same criminal conduct as the Lawrence County case. The proof at trial consisted of an extremely graphic video of the Petitioner, testimony of the victim about her relationship with the Petitioner, photographs the victim sent to the Petitioner at his request, the Petitioner's statement, and the notebook compilation of over 6000 text messages. At the close of their proof, the State elected to rely on only six photographs that were shown to trial counsel prior to trial: two on October 29, 2012, one on November 6, 2012, two on January 23, 2013, and one on January 24, 2013. There were approximately three pages of text messages in the notebook relative to the October 29, 2012 photograph (eight texts from October 30 were highlighted in red and pertained to Petitioner's request for photographs), four pages of text messages relative to the November 6, 2012 photographs (four texts were highlighted in red), and no text messages in the notebook relative to the photographs sent on January 23 and January 24, 2013.

The record shows that at least 5000 text messages in the notebook were admitted into evidence and had no bearing on the offenses in this case. While we do not condone trial counsel's failure to lodge a full and proper objection to the text messages, the State's admission of the voluminous notebook compilation midway through trial was unduly surprising and deprived trial counsel of an opportunity to prepare a defense. This is especially true given trial counsel's defense theory that the instant convictions were previously adjudicated in Lawrence County and barred by double jeopardy. In addition, we find the bulk of the remaining text messages to be highly inflammatory and extremely prejudicial. Any probative value attributed to the remaining text messages was substantially outweighed by their unfair prejudicial effect. Tenn. Rule Evid. 401, 402. Indeed, there was a substantial amount of proof establishing the Petitioner's guilt in this case. However, this was due, in large part, to the State's failure to comply with Rule 16 and Rule 1006. To allow the State to capitalize on a situation it created, in our view, would defeat the very purpose of the rules of discovery. As will be discussed more fully below, had trial counsel, acting as appellate counsel, adequately preserved this issue on direct appeal by including in the record the motion for discovery and the notebook compilation

of the text messages, the Petitioner would have successfully established that the State substantially prejudiced the Petitioner's case by failing to disclose the contents of the full extraction report and the notebook compilation containing over 6000 text messages between the Petitioner and the victim prior to trial. Accordingly, we are compelled to reverse the judgment of the post-conviction court, vacate the Petitioner's convictions, and remand this matter for a new trial.

**B.** **Brady Violation.** In order to establish a due process violation pursuant to Brady, the defendant must prove by a preponderance of the evidence that (1) he requested the information, unless it is obviously exculpatory, (2) the State must have suppressed the information, (3) the information must be favorable to the accused, and (4) the information must be material. Johnson v. State, 38 S.W. 3d at 56 (internal citations omitted). Evidence that is "favorable to an accused" includes both "evidence deemed to be exculpatory in nature and evidence that could be used to impeach the State's witnesses." Favorable evidence has also been defined as:

> evidence which provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness.

Johnson, 38 S.W.3d at 56-57 (internal citations omitted).

Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 58 (internal quotations omitted). Significantly, the test for materiality

> is not whether the defendant would more likely than not have received a different verdict had the evidence been disclosed. See Strickler v. Greene, 527 U.S. 263, 275, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Nor is the test of materiality equivalent to that of evidentiary sufficiency, such that we may affirm a conviction or sentence when, "after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions." Id.; Kyles v. Whitley, 514 U.S. 419, 435 n. 8, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("This rule is clear, and none of the Brady cases has ever suggested that sufficiency of evidence (or insufficiency) is the touchstone [of materiality].").

Johnson, 38 S.W.3d at 58 (internal footnote omitted). Rather, a reviewing court must determine whether the defendant has shown that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence of the verdict. Id. (internal quotations omitted). In other words, evidence is material when, because of its absence, the defendant failed to receive a fair trial, "understood as a trial resulting in a verdict worthy of confidence." Id. (internal citations and quotations omitted).

Where there is a delayed disclosure of evidence, rather than complete non-disclosure of significant exculpatory evidence, this Court must determine whether the delay kept defense counsel from effectively using this evidence in presenting and preparing the defendant's case. State v. Caughron, 855 S.W.2d 526, 548 (Tenn. 1993) (Daughtrey, J., dissenting). An incomplete response to a Brady request might cause the defense to "abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985) (citations omitted). If the defense fails to request a continuance after receipt of the evidence, fails to call or recall a witness to testify regarding the evidence, or fails to extensively cross-examine a witness regarding the evidence, the Brady violation may be cured. This court has recognized that a "[d]elayed disclosure results in prejudice to the defendant and may deny the defendant due process when it is 'too late for the defendant to make use of any benefits of the evidence.'" State Sidney M. Ewing, No. 01C01-9612-CR-00531, 1998 WL 321932, at *8 (Tenn. Crim. App., at Nashville, June 19, 1998).

Finally, the "materiality" aspect of a Brady claim is governed by the same prejudice standard as an ineffective assistance of counsel claim; that is, a petitioner must show that there is a reasonable probability that the result of the proceedings would have been different. Cauthern v. State, 145 S.W.3d 571, 598-99 (Tenn. Crim. App. 2004) (citing United States v. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383); Larry McKay v. State, No. W2008-02274-CCA-R3-PD, 2010 WL 2384831, at *7-9 (Tenn. Crim. App. June 15, 2010)). Accordingly, whether a petitioner is entitled to a new trial based on a violation of Brady presents a mixed question of law and fact. The post-conviction court's findings of fact, such as whether the petitioner requested the information or whether the state withheld the information, are reviewed on appeal de novo with a presumption that the findings are correct unless the evidence preponderates otherwise. The post-conviction court's conclusions of law, however, such as whether the information was favorable or material, are reviewed under a purely de novo standard with no presumption of correctness.

The record clearly shows that the Petitioner requested the information. Trial counsel filed a seven-page discovery motion entitled, "Request for Discovery, Inspection, And Notice of Intent to Use Evidence," which was attached as an exhibit to the hearing. Trial counsel characterized the discovery motion as covering "everything [he] could think of from the kitchen sink on[.]" We agree. The discovery motion was comprehensive and

requested, among other things, to be advised of the exact date, time, and location of the alleged offense, to be allowed to inspect all documents, photographs, tangible objects, which are intended to be used by the State in its case-in-chief, to be allowed to inspect the same items which would be material to the preparation of the defense, and to be allowed to inspect or copy any results of scientific tests. The discovery motion also specifically requested Brady material. Additionally, and most importantly, in the Petitioner's motion for bill of particulars, he explained that, following the Lawrence County arrest, his cellular phone was seized by the police. After his conviction in Lawrence County, his cellular phone was returned; however, there were no photographs on the phone. Trial counsel averred that although the State allowed trial counsel to view the photographs in question, there was no information that furnished the date and time of the photographs. He specifically requested the State to provide the date and time of the photographs sent from the victim's phone to the Petitioner's phone, the specific location of the victim and her phone when the photographs were sent, the date and time that each photograph sent by the victim was received by the Petitioner's phone, and the specific location of the Petitioner's telephone when the photographs sent by the victim to the Petitioner's phone were received. He also requested the time, date, and location of the Petitioner for each of the charged offenses.

In its written response to the motion for bill of particulars, the State acknowledged receipt of the Petitioner's request for information but noted that it "ha[d] already provided to defendant all of the discovery and evidence it has in its possession. Information as to the approximate dates of these offenses is contained in the discovery [the Petitioner] has received." Because "this information" had already been provided, the State averred a bill of particulars was not necessary and urged denial of the motion.

At the hearing on the bill of particulars, trial counsel said, "I have a response from [the prosecution] that basically says if I don't already have it, it doesn't exist. Well, I don't have those photographs. Because of the law, I'm not allowed to possess them. I have got to go to the Attorney General's Office one time and look at them. But, frankly, did not note if there was any date or time indicia on those photographs as to where someone was when the photograph was received on that phone and what date that was received and what time that was received on that phone." In response, the State said, "I don't have that information. And I don't have to have that information, Judge. The case law is very clear. All the State has to allege is that an offense happened prior to the finding of the Grand Jury. We have alleged that. I don't have to have an exact date. And as far as location goes, [the Petitioner] lived in Rutherford County."

In its order denying the bill of particulars, the trial court stated as follows:

The forty-five counts of the indictment against [the Petitioner] stem from fifteen pictures that were allegedly on [the Petitioner's] phone at some point in time. At the hearing, [the Petitioner] claimed that the State cannot prove that [the Petitioner] ever possessed the pictures in Rutherford County, and he needs the Bill of Particulars to see the State's proof on venue. The State responded that it has given everything in its possession to [the Petitioner], and that it is not required to show the [the Petitioner] how it intends to prove its case.

The post-conviction court did not determine whether the Petitioner, in fact, made a request for the information. Upon our de novo review, we conclude that counsel made a request for the evidence.

Next, we must determine whether the State suppressed the evidence. Here, the record shows that trial counsel received only a two-page "hard" report indicating that an examination had been conducted on the cell phones for the Petitioner and the victim. The hard report also reflected the type of software utilized to perform the exams, which was Lantern, Cellebrite, and MPE+ for the Petitioner's phone, and Cellebrite and SUSTEEN's SV3 for the victim's phone. The hard report had a section reflecting the files of evidentiary interest. However, the report did not provide any information concerning the text messages, and trial counsel denied having received an electronic file of the extraction report of the cell phone data. The notebook was replete with over 6000 text messages between the victim and the Petitioner. Specifically, between October 9, 2012 and February 9, 2013, the notebook compilation showed 5419 text exchanges in a format with columns reflecting the folder, party, date and time, network, status, message, and whether the text had been previously deleted. Between February 8, 2013 through April 11, 2013, the notebook compilation consisted of 87 pages of data in fine print extracted from the victim's phone showing conversations exclusively with the Petitioner in a format with columns for the "rectype," time, to, from, message, status, and attachments. Although the post-conviction court determined that trial counsel was "aware" of the text messages, the record does not establish that the State provided trial counsel with a copy of the extraction report or a copy of a flash drive or electronic storage device (CD) in response to trial counsel's request for pretrial discovery or his motion for bill of particulars, or before seeking admission of the notebook compilation of the text messages at trial. Accordingly, the record preponderates against the findings of the post-conviction court. Upon our de novo review, we conclude that the State suppressed the evidence.

We must now determine the favorability of evidence. As relevant here, evidence that is considered "favorable to an accused" is evidence deemed to be exculpatory in nature or evidence which provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although

not indispensable, element of the prosecution's version of the events. The Petitioner's defense theory was that the instant, Rutherford County charges were based on the same criminal conduct as the prior, Lawrence County convictions. Trial counsel zealously argued at the hearing on the motion to dismiss that the instant offenses were barred by principles of double jeopardy. Trial counsel stated that [Detective Neese] told him that his testimony before the Lawrence County Grand Jury was that the victim had sent photos to the Petitioner. He insisted that at that point "all the proof that had ever been adduced in this case was on the table" in Lawrence County. He maintained that after the Lawrence County conviction, "the Petitioner was indicted for having photographs here in Rutherford County that we knew existed at the whole time of the prosecution in Lawrence County." The State countered that the indictments in the instant case were in fact based on the victim sending nude photos of herself to the Petitioner in Rutherford County, while the Lawrence County convictions were based on the Petitioner sending nude videos/photos of himself to the victim in Lawrence County. The State disputed trial counsel's characterization of the Lawrence County case. However, trial counsel pointed out that the Lawrence County search warrant was specifically based on the fact that the victim sent the Petitioner nude photos, and Detective Neese testified to the same at the preliminary hearing in Lawrence County. The trial court then clarified that the issue "would be a question of where [the Petitioner] was when the pictures were sent[,]" and not double jeopardy. Trial counsel agreed with the court, requested the information from the State, and later filed a formal motion for bill of particulars.

Based on the defense theory that the State could not establish venue or that the Petitioner was not in Rutherford County at the time the photos were sent to him, in addition to the fact that the Petitioner had previously pled guilty to similar charges in Lawrence County, we conclude that the technical information, including dates and times the text messages were sent, provided in the extraction report and compiled in the notebook was favorable to the Petitioner.

Finally, we must determine whether the evidence was material. In review of this issue, we are mindful that evidence is material when, because of its absence, the defendant failed to receive a fair trial. The Petitioner argues that the State's failure to disclose the notebook compilation or the extraction report of the text messages was material because it caused him to abandon his defense theory challenging venue. While that may be true, the Petitioner has failed to demonstrate on appeal, in fact, how any of the thousands of text messages deprived the State of venue or jurisdiction in this case. Accordingly, the Petitioner has not established all four prerequisites to establish a Brady violation. He is not entitled to relief on this issue.

**II. Ineffective Assistance of Counsel Claims**. Next, the Petitioner argues trial counsel was ineffective in failing to disclose the existence of the notebook to him prior to

trial. The Petitioner insists that but for trial counsel's failure to apprise him of the notebook, he would have accepted the State's four-year offer to settle instead of proceeding to trial. The Petitioner argues as issues one and two in his brief that trial counsel was ineffective in failing to object to the admissibility of the notebook. Additionally, the Petitioner asserts trial counsel was ineffective in failing to object to the admission of the notebook compilation during trial, arguing that any reasonably prudent counsel would have objected to the notebook, especially had they not previously reviewed its content. Finally, the Petitioner argues as issues three and four in his brief that trial counsel was ineffective in failing to adequately preserve the appellate record for direct appeal. Once again, the State relies on waiver due to the omission of the notebook in the record, and posits, even if trial counsel was deficient, the Petitioner has failed to establish prejudice based on the overwhelming evidence of guilt.

We apply the following well-established legal framework to post-conviction relief, which is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn, 202 S.W.3d at 115 (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). "Because a

petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). The key inquiry regarding the prejudice prong is "'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" Kendrick v. State, 454 S.W.3d 450, 458 (Tenn. 2015) (quoting Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)). "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." Harrington v. Richter, 562 U.S. 86, 110 (2011) (quoting Strickland, 466 U.S. at 686).

The Strickland two-prong analysis applies to challenges of guilty pleas based on the ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (petitioner's acceptance of a plea offer based on trial counsel's erroneous advice). While the elements to establish the first deficiency prong of Strickland remained the same, a petitioner establishes the second prejudice prong by showing "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Lafler v. Cooper, 566 U.S. 156, 160-75 (2012); Missouri v. Frye, —— U.S. ——, 132 S. Ct. 1399, 1407-09 (2012) (in the context of guilty pleas a defendant must show the outcome of the plea process would have been different with competent advice); accord Bush v. State, 428 S.W.3d 1, 20 (Tenn. 2014) (citing Frye, 132 S. Ct. at 1407). The prejudice prong of Strickland in the context of a rejected plea offer also requires the petitioner to show:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 566 U.S. at 164.

- 24 -

In considering the remedy for successful ineffective-assistance-of-counsel claims, the Court cautioned that

> Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. Thus, a remedy must "neutralize the taint" of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution.

Lafler, 566 U.S. at 170 (internal citations and quotation marks omitted).

The order of the post-conviction court neither analyzed whether trial counsel was deficient in failing to advise the Petitioner of the existence of the notebook nor provided an analysis of the prejudice prong as required under Lafler. In any event, the Petitioner argues, in effect, that trial counsel's failure to advise him of the existence of the notebook caused him to reject a four-year offer by the State to settle the case. We cannot hold trial counsel to be deficient based on the State's failure to disclose the notebook compilation prior to trial. Accordingly, the Petitioner is not entitled to relief on this issue.

With respect to trial counsel's failure to object to the admission of the notebook, the post-conviction court determined as follows:

> At the hearing, [trial counsel] testified that he did not view the "notebook" of text messages prior to trial. However, he knew that they existed and that they would likely be used as evidence at trial. He testified that by the time the "notebook" of messages was admitted into evidence, the jury had already viewed a video of the petitioner masturbating and pictures that were sexual in nature that were recovered from the [P]etitioner's cellular phone. Further, he testified that he did not object to the admission of the "notebook" of the text messages because the evidence was overwhelming at that point. Moreover, [trial counsel] testified that it was a strategic decision not to object because he did not want to inflame the jury because he needed the jury to "work with him[.]" Additionally, he felt the "notebook" of text messages "was nothing more than the icing of the cake at that time[.]" When faced with the enormous amount of evidence against his client and the nature of he charges, this type of strategic representation by [trial counsel] was clearly not deficient and did not prejudice the [P]etitioner. Furthermore, the additional evidence admitted against the [P]etitioner was overwhelming, thus any error in not objecting to the "notebook" would not have prejudiced the

- 25 -

[P]etitioner. Therefore, the Court finds that Petitioner has failed to show by clear and convincing evidence that [trial counsel] was deficient in his legal representation and that he was prejudiced by any alleged deficiencies.

Although trial counsel testified that he did not object to the admissibility of the notebook for fear it would anger the jury and because, at that point, the evidence was "icing on the cake," the record shows that trial counsel did not review the notebook containing over 6000 text messages prior to trial. As such, we are unable to conclude that trial counsel's failure to object to its admission was an informed choice based upon adequate preparation. Moore v. State, 485 S.W.3d 411, 420 (Tenn. 2016)(citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996), Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992)) (stating that "deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation"). Accordingly, we conclude that trial counsel was deficient in failing to object to the admission of the notebook at trial. For the same reasons articulated in the prejudice prong of the discovery section, we conclude that the result of the Petitioner's trial would have been different had trial counsel objected to the admission of the notebook.

The order of the post-conviction court also does not address trial counsel's failure to prepare an adequate appellate record. In determining whether a petitioner was deprived of effective assistance of appellate counsel, we apply the same standards as set forth in Strickland v. Washington, above. We are also mindful that the "failure to preserve and/or assert all arguable issues on appeal is not per se ineffective assistance of counsel, since the failure to do so may be a part of the counsel's strategy of defense." State v. Swanson, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984). Here, we do not consider trial counsel's failure to include in the record on direct appeal the discovery motion, the notebook compilation, or the transcript from the motion for new trial litigating the same to be trial strategy. Under these circumstances, the Petitioner must establish a reasonable probability that the inclusion of the motion for discovery, the notebook compilation, and the transcript from the motion for new trial would have entitled him to relief on direct appeal. For the reasons articulated in the discovery section supra, we conclude that appellate counsel was deficient on direct appeal and that the Petitioner would have established (1) that the State's failure to comply with pretrial discovery was prejudicial; and (2) that the result of the proceedings on direct appeal would have been different but for appellate counsel's failure to adequately preserve the record.

## CONCLUSION

Based on the above reasoning and analysis, we reverse the order of the post-conviction court, vacate the Petitioner's convictions, and remand for a new trial.

_____
CAMILLE R. MCMULLEN, JUDGE